# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                                                    : Hon. Joseph H. Rodriguez
American General Life Insurance Company,            :
                                                    : Civil Action No. 1:06-cv-04015 (JHR)
                Plaintiff,                          :
                                                    : **Memorandum Opinion and**
        v.                                          :  **Order**
                                                    :
Countrywide Home Loans,                             :
Stephany Lopez,                                     :
Norberto Lopez, individually and as the             :
Administrator of the Estate of Betty Lopez,         :
and the Estate of Betty Lopez,                      :
                                                    :
                Defendants.                         :

This matter comes before the Court on motion of Plaintiff American General Life Insurance Company ("Insurer") seeking entry of default judgment pursuant to Fed. R. Civ. P. 55  against Defendant Norberto Lopez ("Mr. Lopez"), individually and as the Administrator of the Estate of Betty Lopez.  For the reasons stated below, Insurer's motion will be granted.

## **Factual History**

Decedent Betty Lopez ("Decedent") applied to Insurer on April 22, 2004, seeking the issuance of a policy of term life insurance, with an initial death benefit of $100,000. (Complaint at 3.)  Decedent named as her primary beneficiary "Countrywide Home Loans and/or its successors, balance to Stephanie Lopez." (Id.; Exhibit A, Application Part A at 1.)  Decedent named Mr. Lopez as a contingent beneficiary.  (Id.)

In executing the application for life insurance, Decedent provided material information to Insurer.  (Complaint at 3.)  Specifically, Decedent responded "no" to a question that asked if she had ever had cancer.  (Id. At 4; Exhibit A, Application Part A

at 1.)  Decedent also responded "no" to a question asking if she had ever used any form of tobacco or nicotine products.  (Complaint at 5; Exhibit A, Application Part A at 1.)  As part of her execution of the application, Decedent agreed:

> I understand that any representation made in this application and relied on by the insurer issuing the policy may be used to reduce or deny a claim or void a policy if: (1) it is within its contestable period; and (2) such misrepresentation materially affects the acceptance of the risk.

(Exhibit A, Application Part A at 5.)

The application process required Decedent to submit to a paramedical exam, at which time Decedent was required to answer truthfully additional questions about her medical history.  (Complaint at 5.)  In response to an inquiry seeking the reason for her last medical treatment, Decedent stated only "Gyn exam- normal."  (Id. at 6-7; Exhibit A, Application Part B at 1.)  Moreover, Decedent responded "no" to questions asking (1)  if she had ever been treated for cancer, tumors, masses or cysts; (2) if she was currently taking any medication, treatment or therapy or otherwise under medical observation; (3) if she had, in the last ten years, been hospitalized, or had illness, injury or surgery; (4) if she had, in the last ten years, had laboratory tests, treatments or diagnostic procedures, and (5) if she had knowledge of other conditions that the application had not specifically asked her to disclose.  (Complaint 7-8; Exhibit A, Application Part B at 2-3.)  As part of the paramedical exam, which was part of the application, Decedent acknowledged that by providing fraudulent or misleading information on the application, she could become subject to criminal or civil penalties.  (Id. at 5-6; Exhibit A, Application Part B at 4.)

2

Insurer alleges that based on the representations made by Decedent in her application, it issued Decedent a life insurance policy on July 28, 2004, at the non-tobacco standard rate, with a benefit amount of $100,000.  (Complaint at 8; Exhibit B, Policy.)  Insurer thereafter received a benefits claim, with a Death Certificate dating Decedent's death as July 26, 2005.  (Complaint at 8; Exhibit C, Death Certificate.)  The Death Certificate listed cause of death as "cardiopulmonary arrest, sepsis, brain metastasis (cancer), breast cancer."  (Id.)  Since Decedent had died within two years of the policy being issued, Insurer conducted a contestability investigation.  (Complaint at 8.)

As a result of the contestability investigation, Insurer learned, for the first time, that Decedent had the following medical history undisclosed on her application for life insurance:

A.  On May 2, 2001, Decedent underwent a gynecological examination, where a breast mass was noted in her doctor's records.

B. On May 30, 2001, Decedent underwent a mammogram, which resulted in the identification of an irregular lump, measuring almost two centimeters on the right breast.

C. At the time of the mammogram, doctors recommended that an ultrasound be performed.

D. On August 6, 2001, Decedent's physician advised her that the mass was suspicious.

E. On August 6, 2001, Decedent underwent an ultrasound, at which time it doctors concluded that the mass was solid and "had a suspicious malignum of neoplasm."  Doctors advised that a biopsy be performed.

F. On October 17, 2001, Dr. Frank Koniges, MD, removed the mass and determined that Decedent had T2 NX, MX infiltrating ductal carcinoma.

G. From November 12-13, 2001, Decedent was admitted to Cooper Health

3

Systems and underwent a partial right mastectomy.

H. Decedent was again admitted to Cooper Health Systems from December 10-11, 2001, to undergo a right simple mastectomy.

I. On December 26, 2001, Dr. Generosa Grana, MD, examined Decedent and recommended four cycles of chemotherapy followed by Tamoxifen or Arimidex.

J. Decedent underwent an examination and/or consultation performed by Dr. Generosa on January 3, 2002, at which time Decedent gave her consent for chemotherapy, and was educated on chemotherapy's side effects.

K. Decedent received chemotherapy from January 2002 until March 2002.

L. Upon completion of chemotherapy, Decedent began prescription drug treatment, including Tamoxifen and Naxium.

M. On December 12, 2002, Decedent received treatment and/or consultation from Dr. Cynthia Grich-McClery, MD, who diagnosed Decedent with hiatal hernia, chronic active gastritis, Hypolory and internal hemorrhoids.

N. On February 6, 2004, Decedent was examined at the Cooper Cancer Institute, where doctors recommended that she continue Tamoxifen and have her labs checked.

(Id. at 8-10; Exhibit D, medical records.)  Medical records also contain multiple representations that Decedent smoked.  (Complaint at 10; Exhibit D, medical records.)

Given the evidence produced during the contestability investigation, which demonstrated that Decedent had failed to disclose material facts on her life insurance application, Insurer decided on August 21, 2006, to rescind, *ab infinito*, Decedent's policy of term life insurance, plus interest earned.  (Complaint at 10; Affidavit of Nancy Yasso, Director of Insurer at 8-9.)

## Procedural History

Insurer filed a Complaint in this Court on August 25, 2006 against Countrywide Home Loans, Stephany Lopez, and Mr. Lopez.  The Complaint sought relief in the form

of (1) a court order declaring Decedent's life insurance policy null and void and rescinded, *ab initio*; (2) a court order awarding pre-judgment interest, post-judgment interest, costs of suit, reasonable attorney fees and other such relief that the court deems equitable and just, and (3) a court order awarding treble damages, reasonable costs of investigation, reasonable attorneys fees as a result of Decedent's alleged violation of the New Jersey Insurance Fraud Prevention Act.  (Complaint at 10-13.)

On September 3, 2006, Mr. Lopez was served with the summons and Complaint, individually and in his capacity as administrator of Decedent's estate.  (Exhibit 2, Affidavits of Service.)  On June 1, 2007, Insurer requested Entry of Default as to Mr. Lopez, individually and in his capacity as Administrator of Decedent's estate.  (Docket Entry at ¶ 15.)  The Clerk entered default as to Mr. Lopez and the Estate of Betty Lopez that same day.  (Id.)  On June 29, 2007, Insurer moved for default judgment before this Court against Mr. Lopez individually and in his capacity as Administrator of Decedent's estate.  (Id.; Notice of Motion.)  To date, Mr. Lopez has not filed an Answer or otherwise responded to the Complaint or requested an extension.  Further, he has not opposed the instant motion for default judgment.

## Discussion

Plaintiffs move for Default Judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure.  Rule 55 provides, in relevant part:

> **(a) Entry.** When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default.

> **(b) Judgment.** Judgment by default may be entered as follows:

> **(1) By the Clerk.** When the plaintiff's claim against a defendant is for a sum certain or for a sum which can by computation be made certain, the clerk upon request of the plaintiff and upon affidavit of the amount due shall enter judgment for that amount and costs against the defendant, if the defendant has been defaulted for failure to appear and is not an infant or incompetent person.
> **(2) By the Court.** In all other cases the party entitled to a judgment by default shall apply to the court therefor . . . .

Fed. R. Civ. P. 55.  Under Rule 55, "the entry of default is an essential predicate to any default judgment."  DeTore v. Local No. 245 of the Jersey City Pub. Employees Union, 511 F. Supp. 171, 176 (D.N.J. 1981).  In this case, Default was entered by the Clerk on June 1, 2007, (Docket Entry at 15), therefore, the procedural prerequisite of Rule 55 has been met.

A party is not entitled to the entry of a judgment of default as of right because the entry of such a judgment is left primarily to the discretion of the district court.  Hritz v. Woma, 732 F.2d 1178, 1180 (3d Cir. 1984).  Mr. Lopez is deemed to have admitted the factual allegations of the Complaint by virtue of his default.  See 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2688, at 58-59 (3d ed. 1998).  The Court need not accept Insurer's legal conclusions, however, because "[e]ven after default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law."  Id. § 2688, at 63; see also DirecTV v. Croce, 332 F. Supp. 2d 715, 717 (D.N.J. 2004).

Before entering a judgment of default, a court must consider: (1) whether there would be prejudice to the plaintiff if no default judgment was entered; and (2) whether a meritorious defense has been asserted by the defendant.  See Livingston Powdered

<u>Metal, Inc. v. NLRB</u>, 669 F.2d 133, 136 (3d Cir. 1982); <u>Medunic v. Lederer</u>, 533 F.2d 891, 894 (3d Cir. 1976).  Whether the default was willfully caused by the defendant is also a relevant factor.  <u>Tozer v. Charles A. Krause Milling Co.</u>, 189 F.2d 242, 245 (3d Cir. 1951). In considering these factors, a court must apply a standard of liberality so that any doubt is resolved in favor of hearing claims on their merits.  <u>Medunic</u>, 533 F.2d at 894.

The entry of a judgment of default is merited, in this case, because Insurer will be prejudiced if no default judgment is entered, as it has no other means of vindicating its claim against Mr. Lopez.  Mr. Lopez has not responded in any fashion to Insurer's Complaint.  Mr. Lopez has not asserted any meritorious defense to Insurer's claims, nor has he offered any excusable reason for his default.

It is well established under New Jersey law that a policy of life insurance may be rescinded based upon equitable or legal fraud, even after the death of the insured, when the insured dies within the two-year contestability period. <u>See, e.g.</u>, <u>Hartford Life and Accident Ins. Co. v. Nittolo</u>, 955 F. Supp. 331, 333-35 (D.N.J. 1997) (holding that given defendant's material misrepresentations on his application for life insurance, which served as the basis for the insurance policy being issued, insurer had right under New Jersey law to rescind the policy); <u>Golden v. Northwestern Mut. Life Ins. Co.</u>, 551 A.2d 1009, 1013 (N.J. Super. Ct. App. Div. 1988) (holding that plaintiff's false responses to objective medical questions on an application for life insurance could justify recision of the policy, but did not where insurer was put on notice that plaintiff had made false statements).

Under New Jersey law, the threshold for legal fraud is higher than the threshold

for equitable fraud, and consequently if an insurer proves legal fraud, it has established equitable fraud as well. TIG Ins. Co. v. Privilege Care Mktg., Inc., Civ. No. 03-03747, 2005 WL 994581, at *7 (D.N.J. April 27, 2005) (citing Bonnco Petrol, Inc. v. Epstein, 560 A.2d 655, 660 (N.J. 1989)). In order to rescind an insurance policy based on legal fraud, an insurer must prove that: (1) the applicant made misrepresentations on the insurance application; (2) the misrepresentations were material; (3) the misrepresentations were made with the intention that the insurer would rely on them, and (4) the insurer did rely on the misrepresentations to its detriment. TIG, at *3. In TIG, the district court held that defendants' misrepresentations on an insurance policy constituted legal fraud when the application defendants signed contained a clause stipulating that the insurer would issue its policy based on statements made by defendants in the application. Id. at *5-6.

Here, accepting all facts alleged by Insurer as true, Decedent committed legal and equitable fraud, justifying recision of the life insurance policy issued to her. Decedent made misrepresentations about her medical history in her insurance application. (Complaint at 4-9.) Specifically, Decedent failed to disclose her history of cancer and smoking. (Id. ¶ 20-21.) Moreover, these misrepresentations were material in that Insurer based the issuance of the policy on them. (Id. at 8; Exhibit A, Application Part A at 3.) Further, Decedent intended that Insurer would rely on statements made in the application when issuing its policy, since the application she executed contained a clause stipulating Insurer would rely on her statements. (Exhibit A, Application Part A at 8.) Finally, Insurer did rely on Decedent's misrepresentations to its detriment in that it would not have granted Decedent the life insurance policy but for the

8

misrepresentations made in her application.  (Affidavit of Nancy Yasso ¶ 20.)

Specifically, Insurer claimed that had Decedent disclosed her breast cancer, and history

of smoking, her application for life insurance would have been declined "outright."

Moreover, Insurer relied to its detriment on misrepresentations made by Decedent in

that it issued Decedent a non-tobacco standard policy, despite Decedent's history of

smoking.  (Complaint, Exhibit B, Policy Specifications.)

## **Conclusion**

For the reasons stated above, the Court finds that Plaintiff is entitled to relief

pursuant to Fed. R. Civ. P. 55.

Accordingly,

**IT IS ORDERED** on this 9th day of August, 2007, that Plaintiffs' Motion for

Default Judgment against Defendant Norberto Lopez, individually and as the

Administrator of the Estate of Betty Lopez, is hereby **GRANTED**.


 /s/ Joseph H. Rodriguez
       JOSEPH H. RODRIGUEZ, U.S.D.J.